IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAMUEL ANDERSON,

    Plaintiff,                      No. CIV S-07-1061 GEB GGH P

    vs.

TOM FELKER, Warden, et al.,       ORDER &

    Defendants.               FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. On 7/30/08, defendants Caldwell, David, Felker, Hayes, Hornsten, McDonald, McGuire, Nichols, Runnels and Wong filed a motion to dismiss. Defendant Hunsacker's subsequent request to join the motion to dismiss, filed on 8/27/08, is hereby granted. By Order, filed on 10/23/08, plaintiff's 10/01/08 request for an extension of time was construed liberally and deemed timely filed and plaintiff was granted a thirty-day extension of time to file an opposition. On 11/24/08, plaintiff filed his opposition to the motion; thereafter, defendants, on 12/04/08, filed their reply. Plaintiff's response to the reply, filed on 12/24/08, is not a filing contemplated within the applicable Local Rule, E.D. Local Rule 78-230(m), and is disregarded. Plaintiff has also filed, on 12/11/08, a putative motion for a court-ordered transfer. In addition, plaintiff has

1

most recently filed, on 1/20/09, a document entitled simply "Immi[n]ent Danger."

Plaintiff's Allegations

This case was initiated on 6/4/07.[1] It now proceeds on plaintiff's amended complaint, filed on 11/15/07, as modified by the Order, filed on 5/21/08, dismissing eleven of the defendants named therein with prejudice.[2] The remaining eleven defendants are Warden T. Felker; Associate Warden M.D. McDonald; Assoc. Warden D.L. Runnels; Assoc. Warden R.K. Wong; Medical Technical Assistant (MTA) Hunsacker; Dr. Hornsten; Dr. A. David; Correctional Officer (C/O) Nichols; C/O Hayes; C/O Barron-McGuire; MTA Caldwell.

Plaintiff alleges that defendants Felker, McDonald, Runnels and Wong deprived plaintiff of outside yard exercise by their "illegal placement" of plaintiff on 1/09/07 in Close "A" custody in the Behavior Modification Unit (BMU) at High Desert State Prison (HDSP). AC, pp. 3-4, 14. Plaintiff contends that he filed a 602 inmate appeal on 4/21/07 for which he received a director's level decision, stating that Log no. HDSP 07-1465 (IAB no. 0616019), was partially granted. AC, p. 4. Plaintiff states that he filed, on 2/04/07, a 602 inmate appeal, Log No. HDSP 07-0728 (IAB no. 0615265), because he cannot take aspirin, ibuprofen, Motrin, Naproxen, Vioxx, Celebrex or any over-the-counter pain medications because they cause him stomach pain and doctors would not give him medication for his chronic lower back pain, arthritis and wrist pain; this appeal was denied. AC, p. 5. Plaintiff states that he also filed, on 2/04/07, a 602 appeal with regard to an M.T.A. Brown, whose name he later discovered to be Hunsacker,[3] a defendant herein, whom he claims withheld his diabetes and high blood pressure medication for 4 to 5 days. Id. This appeal "disappeared" or was "screened out." Id. On 2/21/07, plaintiff filed

---

[1] Plaintiff's subsequent complaint, filed on 7/30/08, was dismissed with leave to amend by Order, filed 9/19/07. Plaintiff filed an amended complaint on 10/22/07, and another on 11/15/07. See Order, filed on 3/26/08.

[2] The following defendants were dismissed: D.E. Vandeville, D. Hellwig, J. Owen, D. Peddecord, M. Townsend, R. Kesler, S. Spehling, M. Wright, M. Norgaard, Roche and Tassey.

[3] Plaintiff misspells this name as "Hunsaker."

1  a 602 inmate appeal as to defendant Hornsten for stopping plaintiff's diabetes and high blood
2  pressure medication.  Id.  Plaintiff's 602 appeal, filed on 3/19/07, concerned defendant David's
3  effort to give plaintiff Gabapentin, a medication plaintiff claims causes him to be "doped up or
4  mummified," and for which he explained to Dr. David[4] he had previously signed a refusal to take
5  this medication when housed at Corcoran.  AC, pp. 5, 23-25, 30.  This appeal was "rejected."  Id.
6  In Log no. HDSP-D-07-01948, filed on 3/25/07,[5] also as to defendant David, plaintiff
7  complained of David's trying to make plaintiff take Tylenol for pain even though she herself
8  stated that plaintiff should not take due to damage to his liver, kidneys and intestines and for
9  withholding the reordering of plaintiff's diabetes and high blood pressure medicine, withheld for
10 nine days; plaintiff includes copies up through the second level denial of this appeal.  AC, pp. 5,
11 26-32.

12       Plaintiff references a Reasonable Modification and Accommodations, CDC-1824,
13 to which he evidently attached a 7/13/07 memorandum requesting handicap accessories for the
14 shower in Building 5, D-yard, A-section apparently because he has to wash up in his cell due to
15 his weakness and "loss of breath" and so that he does not face the risk of falling in the showers.
16 AC, p. 5.  He had previously, as of 10/03/05, been located in a yard with handicap shower
17 accessories.  Id.  His appeal regarding this issue, Log. no. HDSP-D-07-02181, was "cancelled,"
18 ignoring doctor's recommendations, apparently referenced in CSP-Cor- 06-4679.  Id.

19       On 6/12/07, plaintiff informed defendant Nichols that he had blood in his stool,
20 who told plaintiff that the MTA had a medical emergency, but that he would leave a note for
21 second watch officers about plaintiff's condition.  AC, p. 6.  On 6/13/07, when plaintiff asked
22 defendant Hayes if defendant Nichols had left a note, defendant Hayes said, "No," and walked
23 away as plaintiff tried to explain about the blood in his stool.  Id.  Plaintiff, also on 6/13/07, told

---

[4] Plaintiff refers to defendant David as "Dr.," but appeal responses to plaintiff's grievances refer to her as "Ms."

[5] But see footnote 11.

3

1  defendant Barron-McGuire about the stool condition and although she stated that she would
2  inform the medical staff, nothing happened. Id.  When on 6/14/07, he again complained of the
3  condition to defendant Barron-McGuire, she said again that she would call the medical
4  department. Id.  Thereafter, plaintiff went "man down" to denote a medical emergency. When
5  defendant Caldwell "finally" showed up during her regular rounds, she said no one had called the
6  medical department, and she did nothing in response to the "man down." Id.  Plaintiff was not
7  called to the doctor's line on 6/15/07, but did that night receive medication back-dated to
8  6/14/07. Id.  At an unspecified point after defendant Caldwell had left, defendant Hayes and
9  another officer (Tassey, previously dismissed as a defendant), came by to observe the blood
10 "knowing" that plaintiff had already flushed the toilet. Id.  Nothing was done for plaintiff. AC,
11 p. 7.

12            Plaintiff lists the following grievances filed at HDSP (some referenced above, for
13 which he provides no dates of director's level decisions): Log no. HDSP-07-0728 (IAB no.
14 0615265)-denied; Log no. HDSP- 07-1465 (IAB no. 0616019)- partially granted; Log no. HDSP-
15 07-01838 (IAB no. 0700173)-denied; Log no. HDSP-07-00443 (IAB no. 0701487)-denied. AC,
16 p. 7.  He states that he filed another medical appeal, Log no. HDSP-D-07-01948, which he did
17 not pursue because of "a pattern with High Desert State Prison's medical department...." Id.  He
18 refers again to a medical appeal that was rejected on 3/25/07, and the reasonable modification
19 request that was canceled. Id.  Plaintiff states that Log no. HDSP-D-07-02467 was granted in
20 part on 7/18/07, in a staff complaint response concerning his grievance regarding the lack of
21 response to his blood in stool condition in mid-June of 2007. AC, pp. 7, 15-19. Id.  Plaintiff
22 references a 9/05/07 director's level review attached to his complaint, showing four appeals
23 screened out for not having been completed through the second level of review, but states that
24 those appeals were never returned to be completed. Id.

25            By this amended complaint, the gravamen of which is the alleged violation of his
26 Eighth Amendment rights in the form of deliberate indifference to and inadequate medical care

4

1 for his serious medical needs, plaintiff seeks declaratory and injunctive relief, as well as money
2 damages.  AC, pp. 7-9.
3 Motion to Dismiss
4        Defendants move for dismissal pursuant to non-enumerated Rule 12(b) of the
5 Federal Rules of Civil Procedure for plaintiff's alleged failure to exhaust his administrative
6 remedies before bringing suit.  Motion to Dismiss (MTD), pp. 1-10.
7        *Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*
8        In a motion to dismiss for failure to exhaust administrative remedies under non-
9 enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of
10 raising and proving the absence of exhaustion."  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.
11 2003).  The parties may go outside the pleadings, submitting affidavits or declarations under
12 penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop a
13 record.  Wyatt v. Terhune, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair
14 notice by Order, filed on 4/25/08.
15        Should defendants submit declarations and/or other documentation demonstrating
16 an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing.
17 Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the
18 complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to
19 the court's attention those parts of the complaint upon which plaintiff relies.  If the court
20 determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate
21 remedy for non-exhaustion of administrative remedies.  Wyatt v. Terhune, 315 F.3d at 1120.
22        *PLRA Requirements*
23        The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,
24 "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any
25 other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until
26 such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief

must exhaust administrative remedies.  <u>Rumbles v. Hill</u>, 182 F.3d 1064 (9th Cir. 1999).  In <u>Booth v. Churner</u>, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that inmates must exhaust administrative remedies, regardless of the relief offered through administrative procedures.  Therefore, inmates seeking money damages must also completely exhaust their administrative remedies.  <u>Booth v. Churner</u>, 532 U.S. 731, 121 S. Ct. 1819 (inmates seeking money damages are required to exhaust administrative remedies even where the grievance process does not permit awards of money damages).  The United States Supreme Court has held that exhaustion of administrative remedies under the PLRA requires that the prisoner complete the administrative review process in accordance with the applicable procedural rules. <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S. Ct. 2378 (2006).  Thus, in the context of the applicable PLRA § 1997e(a) exhaustion requirement, any question as to whether a procedural default may be found should a prisoner plaintiff fail to comply with the procedural rules of a prison's grievance system has been resolved: the PLRA exhaustion requirement can only be satisfied by "proper exhaustion of administrative remedies....," which means that a prisoner cannot satisfy the requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  <u>Woodford v. Ngo</u>, <u>supra</u>, at 84, 126 S. Ct. at 2382.  Moreover, 42 U.S.C. § 1997e(a) provides that no action shall be brought with respect to prison conditions *until* such administrative remedies as are available are exhausted.  <u>McKinney v. Carey</u>, 311 F.3d 1198 (9th Cir. 2002).

*Administrative Exhaustion Procedure*

In order for California prisoners to exhaust administrative remedies, they must proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4) third level appeal to the Director of the California Department of Corrections.  <u>Barry v. Ratelle</u>, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5).  A final decision from the director's level of review satisfies the exhaustion requirement.  <u>Id.</u> at 1237-38.

*Discussion*

In this case both parties argue for the incorrect date for commencement of this action for purposes of the application of the rule on <u>McKinney</u>, <u>supra</u>. This action did not commence with the filing of plaintiff's letter, on 6/04/07, as defendants contend, nor does it begin with the filing of the operative amended complaint,[6] on 11/15/07, as plaintiff would have it. In the Order, filed on 6/25/07, in response to his letter, the court expressly informed plaintiff that plaintiff must properly commence his action before any orders might issue granting or denying relief. Plaintiff was explicitly told that in order to commence the action he must file "a complaint as required by Rule 3 of the Federal Rules of Civil Procedure, and ... must either pay the required filing fee or file an application requesting leave to proceed in forma pauperis" and he was granted thirty days to file a complaint that complied "with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice...." See, Order, filed on 6/25/07 (Docket # 4). Plaintiff's initial complaint, filed on 7/30/07 (Docket # 11), accompanied by an application to proceed in forma pauperis (Docket # 9), therefore, is the appropriate date for commencement of this action.[7]

*Defendants Felker, McDonald, Runnels and Wong*

As to plaintiff's claims of being illegally placed on BMU status Close A custody and deprived of outdoor exercise by defendants Felker, McDonald, Runnels and Wong, defendants do not dispute that plaintiff filed a grievance with regard to this claim, Log no. HDSP-

\\\\\

\\\\\

---

[6] As subsequently modified by court order.

[7] This is not an instance where for purposes of the timing of the running of the statute of limitations an action may be deemed commenced simply upon the filing of any document whereupon a case is opened and dated as initiated from that point. However, even if that were at issue herein, in a situation where the court has affirmatively stated, as here, that the action has not properly commenced, the undersigned would not date the commencement of the action until the date upon which the plaintiff had properly begun the action, that is, in this case, on 7/30/07.

07-1465 (IAB no. 616019), but note that it was granted in part[8] only at the director's level on 8/03/07.[9]  Motion to Dismiss (MTD), p. 3, Ex. C (amended complaint, ¶ 36), Ex. H (copy of director's level appeal decision, dated 8/03/07).  Within the decision, it was found that, while plaintiff (then appellant) had not presented evidence that the CDCR[10] had either inappropriately implemented the BMU program or wrongly assigned plaintiff to it, justification had not been shown for his placement in Close "A" custody and ordered HDSP to schedule a classification committee review for plaintiff's Close "A" custody designation.  In his opposition, plaintiff states that following the success of his appeal at the director's level, his custody level was reduced from Close "A" to Close "B" custody on 8/13/07, but that he was "illegally placed back on Close 'A' custody," apparently as of 9/12/07.  Opp., pp. 5, 17.[11]  He also notes, however, that he was removed from the BMU program altogether on 10/03/07, and placed in the general population, as a result, he believes, of a visit from the "Coleman Team Project" of the CDCR.  Opp., p. 4. However, what is germane is whether or not plaintiff had exhausted his administrative remedies at the initiation of this action on 7/30/07.  Because the director's level decision did not issue until a few days later, on 8/03/07, plaintiff had failed to exhaust his administrative remedies prior to filing suit as to defendants Felker, McDonald, Runnels and Wong, pursuant to McKinney v. Carey, 311 F.3d 1198, and the court must recommend the motion be granted as to these defendants.

\\\\\

---

[8] Although defendants simply state that it was granted at the director's level, the decision itself states that the appeal was granted in part, as plaintiff states.

[9] For some reason, defendants while overstating in their initial moving paper that this grievance was granted (without the "in part" caveat) (MTD, p.3), erroneously state that this grievance was denied at the director's level in their reply (p. 2).

[10] California Department of Corrections and Rehabilitation.

[11] The copy of the classification chrono submitted by plaintiff indicates that plaintiff's custody level was reduced from Close "A" to Close "B" on 8/14/07, but that by the decision dated 9/12/07, plaintiff was raised back to Close "A" custody.  Opp., p. 17.

*Defendant Hornsten*

Of the seven grievances that defendants maintain plaintiff submitted from January of 2007, until 6/04/07 (defendants' erroneous date for commencement of this action), defendants argue that none concerned defendant Hornsten or plaintiff's diabetes or blood pressure medication. MTD, p. 7, Ex. K, Declaration of T. Robertson, HDSP Appeals Coordinator.[12] Plaintiff contends, in his opposition, that in his 2/04/07 grievance, Log No. HDSP 07-0728 (IAB no. 0615265), he stated that defendant Hornsten had canceled his medications for high blood pressure and diabetes, arguing that the cancellation is noted in his medical records note because two weeks later a Dr. French had to re-order them when plaintiff went to an "outside hospital." Opp., pp. 5-6. However, plaintiff himself in his amended complaint, as noted above, writes that he filed a 602 inmate grievance as to defendant Hornsten, not on 2/04/07, but on 2/21/07, for stopping plaintiff's diabetes and high blood pressure medication. AC, p. 5. Plaintiff further states in his amended complaint that the 602 inmate appeal, Log No. HDSP 07-0728 (IAB no. 0615265) he filed on 02/04/07, concerned his objection to the types of medication he was being prescribed for his back and arthritis pain. Id. Defendants demonstrate that this grievance, against unnamed prison staff, was denied in a director's level decision on 8/14/07. MTD, pp. 3-4, Ex. E, copy of director's level decision, IAB no. 0615265, dated 8/14/07. Therefore, the court need not resolve the question of whether or not plaintiff did or did not include his claims with regard to defendant Hornsten within this appeal because the appeal was not administratively exhausted prior to plaintiff's having brought suit, on 7/30/07, nor does plaintiff demonstrate exhaustion of his administrative remedies with regard to defendant Hornsten by any other grievance. The motion should be granted as to defendant Hornsten.

\\\\\

---

[12] Robertson declares under penalty of perjury that the following grievances were filed by plaintiff between 1/01/07 and 6/04/07: HDSP-07-0443; HDSP-07-0728; HDSP-D-07-0886; HDSP-07-1089; HDSP-07-1465; HDSP 07-1838; HDSP 07-1948. MTD, Ex. K.

9

*Defendant David*

With regard to his first allegation against defendant David, plaintiff filed a 602 appeal, filed on 3/19/07, concerning defendant David's prescription of Gabapentin for plaintiff because it made him feel "doped up or mummified." AC, pp. 5, 23-25, 30; MTD, pp. 8-9, Ex. C, p. 39; Opp., p. 6. This appeal was "rejected" as a duplicate by D. Jackson, on 3/22/07, on a form citing three prior grievances, inter alia, HDSP-D-07-00728. AC, p. 22, MTD, p. 9; Opp., p. 6. However, on 3/23/07, Jackson was instructed (by what appears to be a note from plaintiff) to process the grievance because it was not a duplicate, but it was again rejected, on 3/27/07. AC, pp. 21-22, MTD, p. 9; Opp., p. 6.

On or around 5/23/07,[13] plaintiff had filed his second grievance regarding defendant David, Log no. HDSP-D-07-01948, complaining of defendant David's trying to make plaintiff take Tylenol for pain even though she knew that plaintiff had stomach trouble and liver damage and for her having taken nine days to respond to his needs as a diabetic. AC, pp. 5, 26-32; MTD, p. 9. This grievance was processed up through a second level response. MTD, Ex. J, copy of second level appeal denial for 07-01948, dated 8/28/07. As to this appeal, plaintiff expressly states in his amended complaint that he did not pursue this appeal because of a "pattern" he perceived within HDSP's medical department. AC, p. 7. Defendants argue that this appeal was not exhausted prior to the filing of this action (MTD, pp. 9-10), which is true whether plaintiff wrongfully abandoned it or not, as the intermediate second level appeal response post-dates the filing of this action. Therefore, as to plaintiff's allegation with regard to defendant David concerning prescribing Tylenol or failing to refill/renew his diabetic and high blood pressure medication in a timely manner, the motion should be granted.

\\\\\

---

[13] Even though both plaintiff and defendants date the initiation of this grievance as 3/27/07, the copy of Log no. HDSP-D-07-1948 appears to be dated as signed on 5/25/07, and the subsequent appeal responses and further appeals up through the administrative process indicate that the grievance was initiated in May of 2007, not March. See AC, p. & MTD, Ex. J, p. 5.

1  However, as to the first allegation, for which plaintiff claims the grievance
2  regarding Gabapentin was wrongfully rejected, defendant David appears to premise the argument
3  that the first grievance was properly rejected, at least in part, on the incorrect dating of the filing
4  of the second David grievance. MTD, p. 9. That is, the rationale seems to go, because plaintiff
5  filed the second grievance against David (wrongly ascribed the date of 3/25/07, by all parties,
6  rather than the correct date of 5/25/07) before the first one was rejected as duplicative on 3/27/07,
7  the rejection was therefore proper because the grievance regarding Gabapentin is subsumed within
8  the second grievance. This is so because in a portion of Log no. 07-1948, plaintiff addresses his
9  grievance against Dr. David with regard to Gabapentin as well. MTD, Ex. C, p. 28, Ex. J, p. 6,
10 section F. Indeed, the second grievance does appear to address plaintiff's claims as to the
11 Gabapentin. Of course, if the second grievance against David was, in fact, filed two months later
12 than the parties assert here beyond the date of rejection of the first, the rejection could not have
13 been premised on being a duplicate of the second, whether plaintiff sets forth the entirety of first
14 grievance at some point in the second one or not.

15  On the other hand, the face of the rejection form itself finds the first grievance
16 duplicative of three prior inmate grievances filed by plaintiff, including HDSP-D-07-00728 (as
17 well as HDSP-D-07-00886, HDSP-D-00443), not the second grievance on which defendants base
18 part of their argument. It is plaintiff's argument that the rejection of the first grievance or refusal
19 by prison officials to respond to it constitutes administrative exhaustion, and defendants note that
20 courts have found that when prison officials refuse to process a grievance administrative remedies
21 have been exhausted. MTD, p. 9, citing, inter alia, Boyd v. Corrections Corp. of America, 380
22 F.3d 989, 996 (6th Cir. 2004) (agreeing with the Fifth, Eighth, Seventh and Tenth Circuits in
23 holding "that administrative remedies are exhausted when prison officials fail to timely respond to
24 a properly filed grievance.")

25  However, defendants also correctly contend that (MTD, p. 9), per Woodford v.
26 Ngo, supra, 548 U.S. 81, 126 S. Ct. 2378, a prison may reject appeals found procedurally

defective. That is, as noted above, the PLRA exhaustion requirement can only be satisfied by "proper exhaustion of administrative remedies....," which means that a prisoner cannot satisfy the requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Woodford v. Ngo, supra, at 84, 126 S. Ct. at 2382. On the face of it, plaintiff has not shown that the rejection of the first grievance as to defendant David as a duplicate of a prior appeal, that is, as procedurally defective, constituted a wrongful failure to process the grievance. Assuming that this portion of his claim against defendant David was subsumed within the prior appeals noted, particularly HDSP-D-07-00728, it has previously been found that HDSP-D-07-00728 was exhausted as of 8/14/07.[14] Plaintiff asserts that as of 8/06/07, he sent a letter to Chief of Inmate Appeals Grannis that stating that appeal responses to the following were overdue: HDSP-D-07-00728, HDSP-D-07-00886, HDSP-D-01465, HDSP-D-00443 and HDSP-D-07-01838, to which he received a response on 9/05/07. Opp., pp. 4., 8, 13-14. However, this action was filed as of 7/30/07, such that even if these grievances were deemed administratively exhausted as of 8/06/07 (for which plaintiff argues), or 9/05/07, plaintiff would not be helped. Thus, again, plaintiff did not exhaust this portion of his claims against defendant David, whether by procedural default or by premature filing of this action, and the motion should be granted as to this defendant.

*Defendant Hayes, Barron-McGuire and Nichols*

As to these defendants, defendants assert that the alleged misconduct by Hayes, Barron-McGuire and Nichols, regarding not addressing plaintiff's concerns about blood in his stool, which occurred after 6/11/07, took place after the commencement of this action, relying on

---

[14] HDSP-07-00443 (IAB no. 0701487) was exhausted at the director's level on 9/29/07. AC, p.7, MTD, Ex. D, director's level appeal denial, dated 9/29/07. The grievance denominated HDSP-D-07-00886 shows a first level partial grant response, reinstating plaintiff's Paxil medication, dated 5/30/07, which does not appear to specifically relate to the grievance at issue. MTD, Ex. F, first level response dated 5/30/07. In any event, plaintiff states that he did not yet have a director's level appeal response as of 8/06/07, although no record of a second level appeal and response is submitted, and declarant Robertson maintains that no second level review for this grievance was ever obtained. Opp., p. 4, Ex. K.

the erroneous date of 6/04/07 as the date of the initiation of the complaint. MTD, p. 10; Reply, p. 5. Plaintiff does date his allegations as arising from incidents involving these individuals during the span of time from 6/12/07 through 6/15/07. Plaintiff claims that he began the administrative grievance process as to defendants Hayes, Barron-McGuire, Nichols and Caldwell on 6/04/07, and that defendants were found guilty on a staff complaint and therefore effort to exhaust administrative remedies was necessary. Opp., p. 6. Defendants object to plaintiff's representation that a staff investigation was conducted and resolved favorably for plaintiff, reasonably objecting that this contention on plaintiff's part is hearsay, violates the best evidence rule and lacks both foundation and evidentiary support (Reply, p. 5), as plaintiff submits no documentation to support such a claim. Although defendants do not appear to note it, the claim that plaintiff could have complained on 6/04/07 about the future conduct of these defendants which did not to occur mid-June of 2007, is logically incoherent. Although defendants rely on the date of 6/04/07, as the date this action commenced and this court has found that the correct date is 7/30/07, plaintiff's argument that he commenced exhausting administrative remedies as to these defendants before the conduct occurred cannot be credited. In any event, even if plaintiff had filed a 602 inmate appeal as of 6/12/07 through 6/15/07, this would not have been time enough for plaintiff to exhaust administrative remedies before the commencement of this action on 7/30/07. The motion should be granted as to defendants Hayes, Barron-McGuire and Nichols.

*Defendant Caldwell*

The court also finds that plaintiff's claims should be dismissed against defendant Caldwell as well, notwithstanding that – other than on the initial page of the motion – defendants fail to refer to defendant Caldwell in either the body of the motion or in the reply (though plaintiff expressly refers to this defendant in his opposition). While it is true that defendants "have the burden of raising and proving the absence of exhaustion," Wyatt v. Terhune, supra, 315 F.3d at 1119, in this instance where it is plain that the conduct for which she is implicated occurred on 6/14/07, and could not have been aggrieved on 6/04/07, or administratively exhausted by the

1  commencement of this action, as set forth above, the failure to reference this specific individual
2  by name should not result in a finding that this defendant has waived a failure to exhaust
3  argument.  This is particularly true as the court does not require plaintiff to have named each
4  defendant in a prison grievance against whom he later files a civil rights complaint for a claim to
5  be administratively exhausted as long as the gravamen of the claim is raised.

*Defendant Hunsacker*

Plaintiff's allegation against defendant Hunsacker (a.k.a. Brown, according to plaintiff) is that this individual withheld plaintiff's diabetes and high blood pressure medication for 4 to 5 days, which defendants contend is the same claim as that against defendant Hornsten. AC, p. 5; Request,[15] p.2; Reply, p. 6.  Within his amended complaint, plaintiff claims he filed two 602 grievances on 2/04/07, a 602 inmate appeal, Log no. HDSP 07-0728 (IAB no. 0615265), regarding his inability to take aspirin, ibuprofen, Motrin, Naproxen, Vioxx, Celebrex or any over-the-counter pain medications due to their causing him stomach pain and complaining that doctors would not give him medication for his chronic lower back pain, arthritis and wrist pain, which appeal was ultimately denied; a second 602 was filed that day regarding defendant Hunsacker's withholding plaintiff's diabetes and high blood pressure medication for 4 to 5 days. AC, p. 5.  In the amended complaint, plaintiff states that this second grievance was disappeared or was lost.  Id. In his opposition, plaintiff asserts that this second grievance was placed by an unidentified individual between the pages of Log no. HDSP 07-0728 to make sure that it would not get processed.  Id.  Defendants contend that none of the seven grievances plaintiff submitted at HDSP concerned Hunsacker.  Request, p. 2.  Following objections by defendant Hunsacker to the vagueness of plaintiff's assertions, defendant points out that even if plaintiff's grievance against Hunsacker had been combined with grievance 07-0728, the record demonstrates that 07-0728 was properly processed/investigated but that nevertheless it was not completed until after the filing of

---

[15] Defendant Hunsacker's request to join motion to dismiss, filed on 8/27/09 (# 73), which the court has herein granted.

this action. Reply, p. 2. Defendant is correct in that 07-0728 was not denied at the director's level until 8/14/07, as noted previously, and the court has found that this case was properly commenced on 7/30/07. The motion should be granted as to this defendant.

*Miscellaneous*

Plaintiff in an inadequately supported motion for a court-ordered transfer, filed on 12/11/08, seeks a transfer from HDSP to a "medical and mental institution," based on his declaration, under penalty of perjury, of several otherwise unsupported assertions, including that nurses, including defendant Caldwell, for whom this court has recommended dismissal, have attempted to take his life by means of altered medication; that he has been illegally placed in administrative segregation; that unnamed prison guards enter plaintiff's cell, apparently at random, and remove legal documents. Plaintiff bases his assertion that an attempt was made on his life by way of altered medication on a phone conversation between a "Dr." Miller, whom plaintiff states is a nurse practitioner (rather than a physician), with the "prison pharmacy" on 12/01/08, wherein the unnamed pharmacist said that "the capsules in question" were "'with black writing' and not 'white and orange.'" Plaintiff provides no declaration from a Nurse or Dr. Miller; he provides no context for the conversation, no information as to what medication was at issue. Likewise, his other claims are inadequately supported. This request will be disregarded.

Finally, plaintiff has very recently filed, on 1/20/09, a document entitled simply "Immi[n]ent Danger." If this court were to construe the filing as a motion for preliminary injunctive relief, it would be plaintiff's fourth, and the undersigned notes that plaintiff's most recent prior request for a TRO/preliminary injunctive relief, which was his third, was denied by Order, filed on 9/25/08. By this notice, plaintiff alleges that he is being subjected to the intentional withholding of prescribed medication for his Type 2 diabetes, apparently from 12/29/08, until 1/06/09, by an individual he describes as a physician's assistant, but nevertheless identifies as a "Dr." Medina, as well as by Chief Medical Officer Dr. Swingler, neither of whom are named defendants in that action; plaintiff believes he can be rendered comatose without the

medication. Notice, pp. 1-3. Plaintiff also contends that on 1/08/09, he was awakened by sharp pains to his left upper body and was unable to sleep, but when went plaintiff went "man down" for a medical emergency, the unnamed doctor on call simply informed the unnamed nurse who called him that plaintiff should be placed back in his cell. Id., p. 4. Plaintiff does not actually assert that he is still being denied the medication that he believes is necessary for his Type 2 diabetes, nor does he describe further complications since he was kept in his cell and not sent to the prison hospital. In any event, plaintiff appears to have filed this document in support of his request for a court-ordered transfer. To the extent plaintiff seeks to implicate the actions of those other than defendants that were named herein, plaintiff might consider proceeding in a separate action. This court will disregard this inadequately supported filing.

Accordingly, IT IS ORDERED that:

1. Defendant Hunsacker's on 8/27/08 (Docket # 73) request to join the motion to dismiss (# 71), is granted;

2. Plaintiff's filings dated 12/11/08 (# 89), and 1/20/09 (#91), seeking a court-ordered transfer, are disregarded.

IT IS RECOMMENDED that defendants' motion to dismiss for failure to exhaust administrative remedies, filed on 7/30/08 (# 71), be granted as to defendants David, Felker, Hayes, Hornsten, McDonald, Barron-McGuire, Nichols, Runnels and Wong; defendant Caldwell be dismissed for plaintiff's failure to exhaust administrative remedies as to his claims as to this defendant as well, and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 02/04/09

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
ande1061.mtd+